**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

POP TOP CORP.,

     Plaintiff,

        v.

NOOK DIGITAL LLC,

     Defendant.

-------------------------------------------------------------------

Case No. 1:20-cv-06598 (VSB)

**<u>Memorandum of Law in Opposition to
Motion for Order Holding 22 June 2006 as the
Priority Date of U.S. Patent No. 10,866,713</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND: POP-TOP'S PRIORITY CLAIM ........................................................2

ARGUMENT ......................................................................................................................4

I.      Legal standard for claiming priority to an earlier application ...............................4

II.     The accused highlighting functionality indisputably predates the March 14, 2019
        filing date of the '713 Patent.................................................................................8

III.    The undisputed record shows that the '713 Patent is not entitled to a 2006 or 2007
        priority date ...........................................................................................................9

        A.      Pop Top misunderstands both its burden and the legal standard for
                establishing priority to an earlier application.........................................10

                1.      The '713 Patent contains new matter ...........................................11

                2.      The examiner did not determine the priority date of the '713
                        Patent or make a finding that the 2007 Application supports
                        the '713 Patent's claims ..............................................................13

        B.      Pop Top cannot show support for the device-based claims of the '713 Patent
                in the 2006 or 2007 disclosures ...............................................................16

                1.      The '713 Patent claims a custom device-based highlighting
                        service for eBooks........................................................................16

                2.      The 2006 Provisional does not support the device-based
                        claims of the '713 Patent..............................................................19

                3.      The 2007 Application does not support the claims of the '713
                        Patent............................................................................................20

        C.      Pop Top has not established an unbroken priority chain .......................24

CONCLUSION..................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Sanofi*,
    872 F.3d 1367 (Fed. Cir. 2017)..................................................................................20

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010)....................................................................................6

*Augustine Med., Inc. v. Gaymar Industries, Inc.*,
    181 F.3d 1291 (Fed. Cir. 1999)....................................................................................6

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*,
    796 F.2d 443 (Fed. Cir. 1986).......................................................................................5

*In re Beauregard*,
    53 F.3d 1583 (Fed. Cir. 1995)....................................................................................17

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)..................................................................................17

*D Three Enterprises, LLC v. SunModo Corp.*,
    890 F.3d 1042 (Fed. Cir. 2018)..................................................................................23

*Droplets, Inc. v. E\*TRADE Bank*,
    887 F.3d 1309 (Fed. Cir. 2018)........................................................................7, 12, 25

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
    800 F.3d 1375 (Fed. Cir. 2015)..................................................................................20

*Intelifuse, Inc. v. Biomedical Enterprises, Inc.*,
    No. 05-CV-8093-LTS-DFE, 2009 WL 3075803 (S.D.N.Y. Sept. 25, 2009) .........................12

*Kimberly-Clark Corp. v. Johnson & Johnson*,
    745 F.2d 1437 (Fed. Cir. 1984).......................................................................................5

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997)........................................................................7, 22, 23

*Nat. Alternatives Int'l, Inc. v. Iancu*,
    904 F.3d 1375 (Fed. Cir. 2018)..................................................................................14

*Nature Simulation Systems Inc., v. Autodesk, Inc.*,
    23 F.4th 1334 (Fed. Cir. 2022) ..................................................................................15

*In re NTP, Inc.*,
  654 F.3d 1268 (Fed. Cir. 2011)..................................................................*passim*

*Polaroid Corp. v. Eastman Kodak Co.*,
  789 F.2d 1556 (Fed. Cir. 1986)..................................................................2

*Pop Top Corp. v. Amazon.Com, Inc.*,
  No. 4:22-CV-00112 (N.D. Cal. 2021) ........................................................9

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008)..................................................................*passim*

*Purdue Pharma L.P. v. Iancu*,
  767 F. App'x 918 (Fed. Cir. 2019) .............................................................3, 4, 10

*Rsch. Corp. Techs. v. Microsoft Corp.*,
  627 F.3d 859 (Fed. Cir. 2010)....................................................................4

*Tech. Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008)..................................................................*passim*

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
  733 Fed. Appx. 1011 (Fed. Cir. 2018) (unpublished)................................15

*Transco Products Inc. v. Performance Contracting, Inc.*,
  38 F.3d 551 (Fed. Cir. 1994)......................................................................5, 8

*Tronzo v. Biomet*,
  156 F.3d 1154 (Fed. Cir. 1998)..................................................................22

*ULF Bamberg v. Dalvey*,
  815 F.3d 793 (Fed. Cir. 2016)....................................................................23

*Univ. of W. Virginia Bd. of Trustees v. VanVoorhies*,
  278 F.3d 1288 (Fed. Cir. 2002)..................................................................7, 11

*Vanmoor v. Wal-Mart Stores, Inc.*,
  201 F.3d 1363 (Fed. Cir. 2000)..................................................................9

*Vas–Cath Inc. v. Mahurkar*,
  935 F.2d 1555 (Fed. Cir. 1991)..................................................................15

*Woodland Tr. v. Flowertree Nursery, Inc.*,
  148 F.3d 1368 (Fed. Cir. 1998)..................................................................5

*WPEM, LLC v. SOTI Inc.*,
  837 F. App'x 773 (Fed. Cir. 2020), cert. denied, 141 S. Ct. 2628 (2021)................................2

*Zenon Env't, Inc. v. U.S. Filter Corp.*,
   506 F.3d 1370 (Fed. Cir. 2007)..................................................................................24

**Statutes**

35 U.S.C. § 101 ..........................................................................................................13

35 U.S.C. § 102 .......................................................................................................5, 13

35 U.S.C. § 103 .......................................................................................................5, 13

35 U.S.C. § 112 .................................................................................................... *passim*

35 U.S.C. § 119 ..........................................................................................................20

35 U.S.C. § 120 .................................................................................................... *passim*

**Other Authorities**

37 CFR § 1.53 .....................................................................................................5, 7, 11

MPEP § 201.08 ...........................................................................................................14

MPEP § 608.04 ...........................................................................................................12

## INTRODUCTION

Pop Top asks the Court to hold that asserted U.S. Patent No. 10,866,713 B2 ("the '713 Patent"), which issued from an application filed in 2019, is entitled to a priority date over a decade earlier based on patent applications filed in 2006 and 2007. But Pop Top has not even tried to make the showing its motion requires, namely, that these earlier applications disclose, describe, and enable the inventions the '713 Patent claims. The critical question is whether those earlier applications disclose the claims of the '713 Patent in compliance with the written description and enablement requirements of 35 U.S.C. § 112. Although Pop Top's motion doesn't speak to this question, the answer is clear: the 2006 and 2007 applications do not.

Pop Top's request for a 2006 priority date is a transparent attempt to avoid the fatal flaw in its infringement claims against Nook Digital: Pop Top applied for the '713 Patent in 2019, many years after the accused NOOK devices (among others) were marketed and sold with the accused eBook highlighting functionality. Pop Top's allegations against Nook Digital are necessarily doomed, because Pop Top cannot accuse NOOK devices of infringement without invalidating its patent. That is, if NOOK devices infringe, the accused products themselves would necessarily anticipate the claims of the '713 Patent.

To avoid that outcome, Pop Top says that the claims of the '713 Patent should be afforded priority based on 2006 and 2007 applications that disclose web-based highlighting inventions and say nothing about eBooks or eBook readers. These applications do not mention, let alone describe, the inventions claimed in the '713 Patent. And the '713 Patent, which was filed as a continuation-*in-part* of the earlier applications, obviously includes new matter. It discloses custom user devices configured to display documents and enable a highlighting service with in-built software. The 2006 and 2007 applications, in stark contrast, disclose web- and server-based highlighting tools accessed by users through generic computing devices and conventional web browsers. *See infra* 19-24.

1

There is nothing remotely innovative about the devices the earlier applications mention in passing. Pop Top cannot use the 2006 or 2007 applications to push back the '713 Patent's priority date by 13 years.

Pop Top appears to believe that merely asserting its priority claim is enough. It's not. Pop Top must show that the earlier applications satisfy the requirements for a priority claim, including § 112's written description and enablement requirements. It has not done so. And it cannot do so, because (as the continuation-in-part designation indicates) the '713 Patent's device-based claims are new matter that the earlier applications do not disclose.

## BACKGROUND: POP-TOP'S PRIORITY CLAIM

The presumptive priority date for the '713 Patent is March 14, 2019, the date the application was filed. *See* ECF No. 41-1 at 83 ('713 Patent), [22], [54]. But there is no dispute that NOOK's accused highlighting function long predates the '713 Patent's March 14, 2019 filing date. *E.g.*, ECF No. 30 at 1, n.1 (describing NOOK User Guide from 2009, Version 1.5 enabling users to "bookmark, highlight, and annotate the eBooks that you read"; 2011 review comparing NOOK and Amazon Kindle highlighting functionality; and 2012 Unofficial Guide describing NOOK highlight functionality); Brannen Dec. Exs. A-G (illustrations); ECF No. 41-1 at 3; *see infra* 8-9.

Because "that which infringes if later anticipates if earlier," *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573 (Fed. Cir. 1986) (cleaned up), Pop Top's allegations against Nook Digital are self-defeating: if NOOK infringes, Pop Top's allegations are frivolous and the '713 Patent is necessarily invalid; NOOK *itself* invalidates the claims. *See, e.g.*, *WPEM, LLC v. SOTI Inc.*, 837 F. App'x 773, 773-75 (Fed. Cir. 2020), cert. denied, 141 S. Ct. 2628 (2021) (affirming fee award based on this principle where plaintiff's claims were frivolous because "minimally diligent" investigation would have shown that accused technology was prior art described in product manuals that predated patent).

Pop Top has only one way out of this problem: to avoid invalidating its own patent based on the very infringement allegations it seeks to press here and elsewhere, at a minimum it must show that the '713 Patent can claim priority to an earlier application that predates NOOK and other prior art (including Kindle, which Pop Top accuses of infringement in a separate suit). The Federal Circuit has made clear that in cases like this, where intervening prior art is undisputed, the burden is on the patentee to come forward with evidence and argument to establish a priority date earlier than the filing date of the application for the patent-in-suit. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008); *see also, e.g., Purdue Pharma L.P. v. Iancu*, 767 F. App'x 918, 924-25 (Fed. Cir. 2019). That means Pop Top must show not only that an earlier application exists in the priority chain, but that the statutory requirements for claiming priority to that application are satisfied—including the requirement that the earlier application fully disclose the later-claimed invention in the manner required by 35 U.S.C. § 112. *E.g., Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327, 1329 (Fed. Cir. 2008).

Because the priority date of the '713 Patent is a "threshold issue," the parties jointly requested a briefing schedule (ECF No. 38) to permit the Court to decide the matter. On its face, the application for the '713 Patent claims priority as a continuation-in-part to three earlier applications and a provisional application:

- No. 15/042,977, filed Feb. 12, 2016, issued as U.S. No. 10,289,294 (the "2016 Application");
- No. 13/831,331, filed Mar. 14, 2013, issued as U.S. No. 9,292,617 (the "2013 Application);
- No. 11/766,786, filed June 21, 2007, issued as U.S. No. 8,910,060 (the "2007 Application")[1]; and
- Provisional application No. 60/815,467, filed June 22, 2006 (the "2006 Provisional").

---

[1] For convenience, citations to the 2007 Application are to the resulting patent, which Pop Top cites and attached to its motion, not to the application materials. The specification is the same in both.

ECF No. 41-1 at 83, 99, '713 Patent, [63], [60], 1:7-17.

Recognizing that its infringement claims are hopeless unless it can establish a much earlier priority date, Pop Top asserts that June 22, 2006 is the priority date. ECF No. 41 at 5. Its brief ignores the 2013 and 2016 Applications, and for good reason: those applications aren't early enough to avoid the invalidating NOOK and Kindle prior art. Pop Top has instead chosen only to argue for priority based on the 2007 Application and the 2006 Provisional. ECF No. 41 at 2.

Pop Top's all-or-nothing strategy substantially limits the issues before the Court. The Court need only decide whether Pop Top has established priority back to those original applications—including, critically, whether Pop Top has met its burden of establishing that the 2007 Application and 2006 Provisional adequately disclose the '713 Patent's custom device claims. Pop Top's motion utterly fails to make the required showing. Its 5-page argument does not cite any of the controlling Federal Circuit law that governs priority claims. Nor does Pop Top make any effort to show where or how the applications to which it claims priority disclose the '713 Patent's claimed invention. Because Pop Top has the burden of showing that "the asserted claim is entitled to the benefit of a filing date prior to the alleged prior art," *Purdue Pharma*, 767 F. App'x at 924-25, the Court need go no further to deny Pop Top's motion. *See Rsch. Corp. Techs. v. Microsoft Corp.,* 627 F.3d 859, 870-71 (Fed. Cir. 2010) (in view of undisputed prior art reference, district court "correctly placed the burden on [the patentee] to come forward with evidence to show entitlement to an earlier filing date"). Regardless, neither the 2006 Provisional nor the 2007 Application comes close to disclosing or enabling the claims of the '713 Patent.

## ARGUMENT

## I.    Legal Standard for Claiming Priority to an Earlier Application

***Priority date.*** The parties agree that the priority date for the '713 Patent is a "threshold" question here. ECF No. 38 at 2. Critically, the priority date determines what does and does not

count as prior art. Because no one can "patent what was already known to others," *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998), an applicant is not entitled to a patent for an invention that prior art discloses. *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1453 (Fed. Cir. 1984); 35 U.S.C. §§ 102, 103. "Prior art" is broadly defined as the "knowledge that is available, including what would be obvious from it, at a given time, to a person of ordinary skill in an art" and includes patents, published patent applications, printed publications, and inventions in public use or on sale.

A reference constitutes prior art if it predates the invention date. The invention date is presumptively the filing date of an application—here, March 14, 2019. *See* 35 U.S.C. § 102(a), (b), (e); *see also Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986) ("date of invention" is "presumed to be the filing date of the application until an earlier date is proved"); 37 CFR § 1.53(b). Under certain circumstances, however, an application may "claim the benefit" of the filing date of another, earlier filed application. 35 U.S.C. § 120. This is called claiming "priority" and means the later application is treated as if it were filed on the same date as the earlier application. *E.g., Transco Products Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 556 (Fed. Cir. 1994). If (and only if) the statutory requirements for claiming an earlier priority date are satisfied, that earlier date will govern for purposes of determining what is prior art. *See* 35 U.S.C. § 120; *Transco Products*, 38 F.3d at 556; *Tech. Licensing Corp.*, 545 F.3d at 1321 n.5.

Those requirements are set forth in 35 U.S.C. § 120:

> An application for patent for an invention disclosed in the manner provided by section 112(a) (other than the requirement to disclose the best mode) in an application previously filed in the United States, or as provided by section 363 or 385, which names an inventor or joint inventor in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or

> termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

The first critical requirement is thus that the earlier application must disclose the invention "in the manner provided by" 35 U.S.C. § 112. Section 112, in turn, provides that the earlier application must contain both a written description of the invention that supports the claims of the later application and an enabling disclosure—meaning, it must provide sufficient detail to enable a person skilled in the art to "make and use" the invention. 35 U.S.C. § 112 ("specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same."); *PowerOasis, Inc., Inc.*, 522 F.3d 1299 at 1306; *see also Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344-45, 1351 (Fed. Cir. 2010) (written description and enablement are separate requirements of § 112 and specification must satisfy both).

As relevant here, that means the patent applicant must have (1) actually invented what is set forth in the '713 Patent's device-based claims, (2) *disclosed that as his invention* in the 2006 or 2007 Applications in a manner sufficient to show that he both possessed the claimed subject matter and regarded it as his invention; and (3) disclosed it in enough detail to allow ordinarily skilled artisans to make and use his claimed device-based method of highlighting. *E.g., Ariad Pharms.,* 598 F.3d at 1344, 1351 ("specification must describe an invention understandable to [a] skilled artisan and show that the inventor actually invented the invention claimed" and also must "describe how to make and use the invention (*i.e.,* enable it)"). The *"*earlier filed application must describe the later claimed invention in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought." *Tech. Licensing*, 545 F.3d at 1331 (cleaned up); *PowerOasis*, 522 F.3d at 1306; *Augustine Med., Inc. v.*

*Gaymar Industries, Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999). It is not enough for the claimed invention to be "an obvious variant of that which is disclosed in the specification"; the "prior application itself must describe" and "fully set forth the claimed invention." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

Section 120 also requires that the later application be "filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application." As the Federal Circuit has held, "Section 120 places the burden on the patent owner to provide a clear, unbroken chain of priority." *Droplets, Inc. v. E\*TRADE Bank*, 887 F.3d 1309, 1317 (Fed. Cir. 2018). That means that where, as here, "the later filed application claims priority through the heredity of a chain of applications, *each application in the chain* must satisfy § 112." *In re NTP, Inc.*, 654 F.3d 1268, 1277 (Fed. Cir. 2011) (emphasis added).

***Continuation-in-part (CIP) applications.*** Further devastating for Pop Top is that the application for the '713 Patent is a continuation-*in-part* (CIP) of the 2007 Application. ECF No. 41-1 at 83, 99, '713 Patent [63], 1:7-17. By definition, a continuation-in-part adds matter *not present* in the earlier application. *Univ. of W. Virginia Bd. of Trustees v. VanVoorhies*, 278 F.3d 1288, 1297 (Fed. Cir. 2002) ("some subject matter of a CIP application is *necessarily* different from the original subject matter" (emphasis added)); *PowerOasis, Inc.*, 522 F.3d at 1304 n.3 ("the quintessential difference between a continuation and a continuation-in-part is the addition of new matter"); 37 CFR § 1.53(b)(2).

A claim in a CIP is entitled to the filing date of an earlier application only if a person skilled in the art would understand from the earlier application alone, without consulting the new matter in the CIP application, that the inventor had possession of the invention claimed in the CIP

application and how to make and use it. *Tech. Licensing*, 545 F.3d at 1333–34. Priority is assessed separately for each individual claim and any claim that recites unsupported new matter is entitled only to the filing date of the later CIP application. *Transco Prods.*, 38 F.3d at 557 n.6.

    ***Pop Top's burden.*** A "patent's claims are not entitled to an earlier priority date merely because the patentee claims priority." *In re NTP, Inc.*, 654 F.3d at 1276. Because an earlier priority date is indisputably necessary to overcome prior art, Pop Top bears the burden of coming forward with evidence and argument establishing that the asserted claims are entitled to the benefit of an earlier filing date. *PowerOasis*, 522 F.3d at 1305-06. While an alleged infringer has the burden of persuasion to prove invalidity by clear and convincing evidence, once sufficient evidence puts at issue whether there is art that predates the apparent effective date of an asserted patent claim, the patentee has the burden to show not only the existence of an earlier application, but that the disclosure in the earlier application supports the claim. *Tech. Licensing*, 545 F.3d at 1327, 1329; *PowerOasis*, 522 F.3d at 1303, 1305; *see also In re NTP, Inc.,* 654 F.3d at 1276 ("for a patent's claims to be entitled to an earlier priority date, the patentee must demonstrate that the claims meet the requirements of 35 U.S.C. § 120").

## II.    The accused highlighting functionality indisputably predates the March 14, 2019 filing date of the '713 Patent.

    Pop Top has accused NOOK's highlighting function of infringing the '713 Patent. ECF No. 22 ¶¶ 19-48 (Am. Compl.). There is no question—and Pop Top does not dispute—that the accused highlighting functionality pre-dates the 2019 filing date of the application that issued as the '713 Patent. It is beyond dispute (and Pop Top has never tried to, and cannot contest), that NOOK products with the accused highlighting functionality were available to the public years before the 2019 filing date of the '713 Patent. *See* ECF No. 41-1 at 4-8; ECF No. 30 at 1 n.1. To the contrary: Pop Top placed in the record on this motion Nook Digital's letter furnishing numerous examples

of NOOK marketing materials from 2009-12 that described the accused highlighting function. ECF No. 41-1 at 7-8; *see also* Brannen Dec. Exs. A-G.

In a separate lawsuit, Pop Top also accuses Amazon.com Inc.'s Kindle products of infringing the '713 Patent. *See* Complaint, *Pop Top Corp. v. Amazon.Com, Inc.*, No. 4:22-CV-00112 (N.D. Cal. 2021), ECF No. 1. The Kindle, too, long predates the filing date of the 2019 application that issued as the '713 Patent. The 2007 Kindle User's Guide explains, "You can highlight text in Kindle like you would use a highlighter pen on paper." Brannen Dec. Ex. H, at 4, Kindle User's Guide, 2nd Edition.

Because the very products accused of infringement predate its patent application, Pop Top's infringement claims necessarily fail absent an earlier priority date. *See, e.g.*, *PowerOasis*, 522 F.3d at 1305 ("That which would literally infringe if later in time anticipates if earlier.") (cleaned up); *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000) (accusation that a product infringes satisfies burden of proving that product's pre-critical date sales anticipate). Pop Top thus agrees, as it must, that the priority date is a "threshold issue" for the Court. ECF No. 38 at 2. Nowhere in its motion does Pop Top even suggest that its claims could proceed if the Court finds a priority date later than the requested 2006 date. ECF No. 38 at 1-5. Pop Top thus effectively concedes what is obvious from the record: for this case to proceed, Pop Top must at a minimum establish a 2006 or 2007 priority date.

As explained next, it has not done so and cannot do so.

## III.   The undisputed record shows that the '713 Patent is not entitled to a 2006 or 2007 priority date.

Pop Top's cursory motion does not come close to establishing a priority date prior to 2019. Pop Top has chosen an all-or-nothing approach: it argues *only* that the Court should adopt a 2006 priority date. ECF No. 41 at 1-5. It has thus waived any argument for a priority date based on the

2013 or 2016 Applications. And Pop Top offers no persuasive ground to support its desired 2006 date. First, Pop Top misunderstands its burden and makes no meaningful effort to show that the 2006 Provisional discloses the '713 Patent's device-based claims. Second, what the '713 Patent claims is substantially and distinctly different from what the earlier applications disclose. The '713 Patent claims a custom device-based highlighting service for documents and eBooks. The 2006 Provisional and 2007 Application disclose something entirely different: a highlighting service for webpages and internet documents accessed through generic computing devices and conventional web browsers. The claimed invention is simply not described in the earlier 2006 or 2007 Applications—at all. And third, Pop Top has made no effort to establish the unbroken priority chain required by § 120.

### A.      Pop Top misunderstands both its burden and the legal standard for establishing priority to an earlier application.

The most important aspect of Pop Top's brief is what's glaringly absent: it makes no effort to show that the 2006 or 2007 Applications disclose the asserted claims. Instead, Pop Top offers repeated conclusory assertions that Nook Digital has no basis to dispute a 2006 priority date. ECF No. 41 at 3. That is not how this process works. Pop Top is the moving party and it bears the burden of coming forward with evidence and argument to support an earlier priority date. A patentee with grounds to establish an earlier priority date would do so by providing a detailed explanation of how the later-filed claims are disclosed and described in the earlier applications. *Cf. Purdue Pharma*, 767 F. App'x at 924 (holding that "undeveloped, conclusory evidence" from patentee's expert was insufficient to establish earlier priority date). Pop Top makes no attempt at the requisite showing. The Court could (and should) deny its motion on this basis alone.

The two arguments Pop Top's motion puts forth confirm that Pop Top is addressing the wrong questions and does not understand how priority dates are established. It argues that (1) the

asserted claims do not include any new matter because the '713 Patent's specification contains few changes from the specification for the 2007 Application; and (2) the Court must defer to a supposed finding by the PTO that the 2007 Application adequately discloses the asserted claims. Pop Top is wrong on both points.

### 1.     The '713 Patent contains new matter.

Pop Top asserts—by comparing the specifications of the '713 Patent and the 2007 Application—that the '713 Patent contains no new matter. To begin with, Pop Top is necessarily wrong because the applicant designated the '713 Patent as a continuation-*in-part*. ECF No. 41-1 at 99, '713 Patent, 1:7-17. By definition, a CIP application contains new matter. *See* 37 CFR § 1.53(b)(2); *Tech. Licensing*, 545 F.3d at 1321; *PowerOasis*, 522 F.3d at 1304 n.3; *University of West Virginia Board of Trustees v. Vanvoorhies*, 278 F.3d 1288, 1297 (Fed. Cir. 2002) ("A continuation-in-part application is just what its name implies. It partly continues subject matter disclosed in a prior application, but it adds new subject matter not disclosed in the prior application. Thus, some subject matter of a CIP is necessarily different from the original subject matter."). The applicant chose to file and prosecute the '713 Patent application (along with the other nonprovisional applications in the purported priority chain) as a CIP. Pop Top cannot now, during litigation, retroactively recast the '713 Patent application as a *continuation* rather than a CIP.[2]

Pop Top is also wrong because, as the intrinsic record shows, the '713 Patent absolutely contains new matter. At least the following aspects constitute new matter in the '713 Patent:

- Pop Top's own comparison between the '713 Patent and the 2007 Application reveals that the '713 Patent claims highlighting a document or eBook on a "mobile, handheld,

---

[2] In contrast to a CIP, a continuation application "contains the same disclosure found in an earlier application." *Tech. Licensing Corp.*, 545 F.3d at 1321.

eBook reader, or similar device"; a different and broader scope of invention than highlighting an internet document in a web browser. *See* ECF No. 41-1 at 111; 2007 Patent cls.1-4; *Intelifuse, Inc. v. Biomedical Enterprises, Inc.*, No. 05-CV-8093-LTS-DFE, 2009 WL 3075803, at *8 (S.D.N.Y. Sept. 25, 2009) ("New matter is subject matter in an application that was not disclosed in the original specification, drawings or claims of an earlier filed application.") (citing MPEP § 608.04(a)).

- The '713 Patent is a continuation-in-part of the 2013 and 2016 Applications and expressly incorporates by reference the contents of those applications. '713 Patent 1:7-35. Those incorporated applications are themselves continuations-*in-part* of the 2007 Application that by definition disclose new matter and metaphysically could not have been included in the 2007 Patent. The '713 Patent also incorporates by reference other patents and applications to which the 2007 Application does not cite. *Compare* ECF No. 41-1 at 99, '713 Patent 1:7-35 (listing at least 10 patents and applications) *with* ECF No. 41-1 at 73, 2007 Patent ('060 Patent) 1:9-12 (incorporating only the 2006 Provisional).[3]

- Critically, the claims of the '713 Patent themselves contain and reflect new matter not disclosed in the 2006 or 2007 Applications. Pop Top's misleading comparison ignores the '713 Patent *claims*. *See* ECF No. 41-1 at 110-125. Those claims include multiple limitations that appear nowhere in the 2006 or 2007 Applications, including: a

---

[3] Pop Top has not attempted to rely on these applications, nor can it. Pop Top has waived any argument that new matter in the 2013 and 2016 Applications supports the device-based claims of the '713 Patent. Given the timing of the accused NOOK and Kindle highlighting functionality, establishing priority to these applications would not salvage Pop Top's case. And as the Federal Circuit has held, applications merely incorporated by reference are irrelevant for purposes of determining a priority date. *Droplets,* 887 F.3d at 1320.

"personal digital device," "portable electronic device," and "portable electronic book device" with "executable software stored in the in-built memory of the device" that provides a highlighting feature without requiring the user to install any additional software components. *See infra* 16-18. This is the epitome of new matter.

Pop Top's position is untenable. It cannot simultaneously assert that the claims of the '713 Patent are entitled to a 2006 priority date and take the position that the claim limitations are irrelevant to assessing whether the '713 Patent contains new matter. Because Pop Top has made no effort whatsoever to show that the 2006 Provisional (or any other earlier application) discloses the '713 Patent claims, its assertion of "no new matter" fails.

### 2. The examiner did not determine the priority date of the '713 Patent or make a finding that the 2007 Application supports the '713 Patent's claims.

Pop Top also asserts that the examiner found written description support for a 2006 priority date when s/he amended the '713 Patent claims for allowance. ECF No. 41 at 4-5. Not so.

*First*, the examiner did not determine the effective filing date of any claim, and made no mention of whether the 2006 Provisional or 2007 Application contained support for the '713 Patent's claims. *See generally* Brannen Dec. Ex. I (Prosecution History). The examiner amended the claims after an applicant-initiated interview to resolve rejections under 35 U.S.C. §§ 101, 102, and 103. *See id.* at 40 and 74 (Prosecution History: 2020-10-14 Pre-interview first office action; 2020-10-30 Notice of Allowance and Fees Due). Pop Top concedes that the examiner did not address written description. ECF No. 41 at 3 ("The patent-in-suit had no section 112 rejections."). The only reference to a priority date in the prosecution history is the applicant's own priority claim, as set forth on the patent's face. *See id.* at 97, 92, and 9 (Prosecution History: 2019-04-03 Filing Receipt; 2019-04-25 Filing Receipt; 2020-11-13 Filing Receipt).

There simply was no finding by the examiner about the priority date. "In the absence of an interference or rejection which would require the PTO to make a determination of priority, the PTO does not make such findings as a matter of course in prosecution. The PTO's own procedures indicate that examiners do not make priority determinations except where necessary." *PowerOasis*, 522 F.3d at 1305 (quoting MPEP, Seventh Ed. (July 1998), at § 201.08). The examiner's silence is not entitled to deference as a priority finding. *See Tech. Licensing Corp.*, 545 F.3d at 1331-32 (where there is nothing in the prosecution history to indicate that the PTO determined the effective filing date of a claim, the appropriate deference to be conferred to an examiner is subsumed into the overall assessment of whether the claim is entitled to the earlier filing date). The Federal Circuit has rejected similar arguments that an examiner must have "implicitly" decided the adequacy of a written description for a priority claim. *See In re NTP, Inc.,* 654 F.3d at 1278-79 (rejecting argument that examiner "implicitly found" written description adequate, where "examiner issued no rejection based on § 112" nor made "an affirmative statement that the claims . . . satisfied § 112"); *see also Nat. Alternatives Int'l, Inc. v. Iancu*, 904 F.3d 1375, 1380 (Fed. Cir. 2018) ("examiners and adjudicators cannot be expected to scrutinize the prosecution history of an application and each parent application to determine whether the application would have met § 120's requirements at any point during its pendency").

Further, even if the examiner had considered the adequacy of the *'713 Patent's* written description, that is not the same as assessing whether 2007 Application's specification is sufficient, by itself, to disclose and enable the matter claimed by the '713 Patent. Any assessment of the adequacy of the written description that the examiner was conducting would necessarily have included the '713 continuation-in-part specification *with its additions and changes* from the 2007 Application: the '713 Patent claims themselves, as well as all of the material incorporated by

reference including the 2013 and 2016 Applications. *See supra* 11-13. The examiner had no basis to assess (and certainly did not purport to assess) the dispositive question here: whether the 2006 and 2007 Applications by themselves sufficiently disclosed the newly filed '713 Patent claims in the manner required by § 112. *Cf. In re NTP, Inc.,* 654 F.3d at 1279 ("examiners have limited time to review each application and cannot be expected to fully address every possible issue before them").

In making its misguided deference argument, Pop Top cites two inapposite cases. In *Nature Simulation Systems Inc., v. Autodesk, Inc.,* 23 F.4th 1334, 1336, 1343 (Fed. Cir. 2022), the Federal Circuit held that the district court erred when analyzing indefiniteness by giving no weight to prosecution history in which the examiner had addressed and resolved the issue. *Tinnus Enterprises, LLC v. Telebrands Corp.*, 733 Fed. Appx. 1011, 1012 (Fed. Cir. 2018) (unpublished) similarly involved an examiner's amendment to add a claim term that was challenged for indefiniteness where the examiner had provided remarks concerning the objective boundaries of the claim term. Neither case concerned a § 112 issue about which the examiner had said absolutely nothing during prosecution, as is this case here.

*Second*, Pop Top's argument that the examiner withdrew a rejection for lack of enablement, and subsequently amended the claims that issued from the 2007 Application, is irrelevant. *See* ECF No. 41 at 3. The issue here is not whether the claims *of the 2007 Application* and resulting patent are supported in the 2007 Application. The question is whether the 2006 Provisional (or 2007 Application) discloses support for the claims **of the '713 Patent**, filed 12 years later. *See Tech. Licensing*, 545 F.3d at 1331-32; *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1560 (Fed. Cir. 1991). That is the question Pop Top should have, but did not, address in its motion.

Pop Top's minimalist motion thus fails to meet its burden to come forward with evidence showing that the disclosure of the earlier applications (1) convey to those skilled in the art that as of June 22, 2006 (or even as of June 21, 2007), the inventor was in possession of the inventions he claims in the '713 Patent and (2) provide a sufficient description to enable others to practice those claims. Its motion should be denied.

**B.    Pop Top cannot show support for the device-based claims of the '713 Patent in the 2006 or 2007 disclosures.**

Even setting aside Pop Top's failure to meet its affirmative burden, its demand for a 2006 priority date cannot succeed. No reasonable fact finder could find that the disclosures of the earlier applications convey with reasonable clarity to those skilled in the art that, as of June 22, 2006, the inventor possessed what the '713 Patent claims: a custom device-based highlighting service for eBooks. The '713 Patent is entitled "Highlighting on a Personal Digital Assistant, Mobile Handset, eBook, or Handheld Device." *See* ECF No. 41-1 at 83, '713 Patent, [54]. As explained below, nothing in the earlier filed applications discloses, describes, or enables these device-based claims.

**1.    The '713 Patent claims a custom device-based highlighting service for eBooks.**

The 3 independent claims of the '713 Patent are all device-based—they either claim a custom device, executable software stored in the memory of such a device, or a method using such a device. Specifically, each recites a custom user device with in-built software that provides a highlighting service to allow a user to highlight a document or eBook. ECF No. 41-1 at 107-08, '713 Patent, cls. 1-21.

Independent claim 1 and corresponding dependent claims 2-9 are apparatus claims. They specify that the custom user device is a "personal digital device" or "portable electronic device."[4]

---

[4] There is no antecedent basis for the term "the portable electronic device" in claim 1. This presents an indefiniteness problem that is not the subject of the present motion.

They further recite that the device's in-built software "is configured to provide a highlighting service," and does so "without requiring the user to install any additional software components."

Claim 1 provides:

> 1. A *personal digital device* with an in-built memory, the device comprising: *executable software stored in the in-built memory of the device, the software operative with a processor of the device, without requiring the user to install any additional software components,*
> the software enabling the portable electronic device to display a document on a screen of the device,
> wherein the document was retrieved from a content server on the Internet,
> wherein the document was caused to be displayed on the screen of the device by utilizing at least a portion of the software,
> *wherein the software is configured to provide a highlighting service to enable the user to create a highlight on at least one object of the document,*
> wherein the highlighting service is visually invoked by a user initiated action,
> wherein the software and/or the highlighting service is further configured to store the highlight, or a reference to the highlight, or a set of data associated with the highlight, created by the user in a storage connected to the Internet along with a unique reference to the user who created the highlight, and a unique reference to the document that the highlight was created on, and
> wherein, upon being invoked, the software and/or the highlighting service is furthermore configured to automatically retrieve at least one of a previously stored: (i) a highlight, (ii) a reference to a highlight, or (iii) a set of data associated with a highlight.

ECF No. 41-1 at 107, '713 Patent, cl. 1 (emphasis added).

Independent claim 16 and dependent claims 17-21 are written as *Beauregard* claims. A *Beauregard* claim is "a claim to a computer readable medium . . . containing program instructions for a computer to perform a particular process." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (citing *In re Beauregard,* 53 F.3d 1583 (Fed. Cir. 1995)). These claims parallel claim 1, but limit the custom user device to a "portable electronic book device" and the document to an "eBook." They further specify that the software for "enabling a highlighting service" is "stored in a memory of the device." Claim 16 provides:

16. A non-transitory computer-readable medium having stored thereon, a set of computer-executable *instructions* for *causing an eBook to enable highlighting, the instructions executing on a processor of a portable electronic book device, wherein the device has executable software stored in a memory of the device for performing the steps of:*

*enabling a highlighting service on a currently displayed document,*

wherein the currently displayed document was obtained from a content server connected to the Internet,

wherein the highlighting service is visually invoked upon an action initiated by the user, and enables a user of the currently displayed document to generate at least one new highlight,

wherein the highlighting service is configured to store the new highlight, or a reference to the new highlight, in a storage unit, and

wherein the highlighting service upon being invoked, is configured to automatically retrieve at least one previously generated highlight.

ECF No. 41-1 at 108, '713 Patent, cl. 16 (emphasis added).

Independent claim 10 and corresponding dependent claims 11-15 are method claims. They claim a method of using a custom device-based highlighting service. They provide that the custom user device is a "digital handheld device," and that its operative software "enables activation of the highlighting functionality," "without requiring a user of the device to install a special software component." Claim 10 provides:

10. A computer-implemented method for *highlighting functionality on a digital handheld device without requiring a user of the device to install a special software component*, the method comprising the steps of:

serving a document to the device, wherein the document was obtained from a content server connected to the Internet; and

displaying the document on a screen of the device by executing a software operative with a processor of the device,

*wherein the software enables activation of the highlighting functionality on the device,* and the highlighting functionality is visually invoked in response to an action initiated by the user,

wherein the highlighting functionality enables a user of the device to:

create a highlight on a portion of the document;

store the highlight, or a reference to the highlight, or a set of data associated with the highlight, created by the user in a memory with a unique reference to the user who created the highlight, and a unique reference to the document that the highlight was created on; and

automatically restore a highlight on a portion of the document, upon the highlighting functionality being invoked.

18

ECF No. 41-1 at 108, '713 Patent, cl. 10 (emphasis added).

    **2.**    **The 2006 Provisional does not support the device-based claims of the '713 Patent.**

Pop Top asks this Court to adopt a priority date based on the 2006 Provisional filed on June 22, 2006. ECF No. 41 at 1. But Pop Top has not and cannot show that the 2006 Provisional discloses, describes, or enables the '713 Patent's device-based claims. The 2006 Provisional is entitled "Search Using Portions of a Web Page and Highlighter Functionality on Web." Brannen Dec., Ex. J (2006 Provisional) at 1. It pertains, explicitly, to a web-based highlighting service for webpages. *Id.* at 3-8. The 2006 Provisional explains that people are typically interested only in select portions on a web page and need to select and annotate these portions. *Id.* at 4. The disclosed solution is a web-based tool that allows users to selectively highlight text on any web page without installing any additional software on their computers. *Id*. Users can then share the highlighted web pages by email, retrieve webpages based on highlighted passages, or display highlights on their web page using simple code snippet. *Id.* at 4-8.

The invention disclosed by the 2006 Provisional is thus explicitly web-based. *See id.* at 4. Users' highlights and other information are stored on the inventor's "database server." *Id.* at 7-8. The 2006 Provisional makes no mention of having improved a device in any way. It does not disclose, let alone have purport to invented and enabled, device-based highlighting. *See generally id*. Indeed, the 2006 Provisional expressly disclaims any device-based invention: it says users may "invoke it from anywhere, using any computer connected to the Internet." *Id.* at 5. The user devices recited in the '713 Patent claims—"eBook," "personal digital device," "portable electronic device," "digital handheld device," "portable electronic book device," etc.—are nowhere mentioned in the 2006 Provisional, which discloses a "web-based tool." *See generally id*.

The 2006 Provisional, which must adequately describe and enable the inventions claimed in any nonprovisional application that claims priority to it, therefore does not support the claims of the '713 Patent. 35 U.S.C. § 119(e); *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1380 (Fed. Cir. 2017) (to afford priority date of provisional application to later utility application, the provisional must both provide adequate written description and enable the claims of the later application); *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1381 (Fed. Cir. 2015) ("A reference patent is only entitled to claim the benefit of the filing date of its provisional application if the disclosure of the provisional application provides support for the claims in the reference patent in compliance with [the written description and enablement requirements of] § 112 ¶ 1."). Thus, the '713 Patent is not entitled to a priority date of June 22, 2006.

### 3.      The 2007 Application does not support the claims of the '713 Patent.

The 2007 Application likewise provides no support for Pop Top's priority claim. Entitled "Method and Apparatus for Highlighting a Portion of an Internet Document for Collaboration and Subsequent Retrieval," the 2007 Application issued as U.S. Patent No. 8,910,060 (alternatively, the "060 Patent") on December 9, 2014. ECF No. 41-1 at 57, '060 Patent [54],[45]. It discloses a method and system for enabling a user to selectively highlight an internet document or webpage in a web browser without downloading and/or installing custom software. *Id.* at 57, 73, '060 Patent Abstract; *see generally id*. The system includes a highlighting server, content provider server, and a user device employing a conventional web browser. *Id.* at 59-61, 62, 75, '060 Patent 5:19-26, Figs. 1-3, 5. The highlighter server is communicatively coupled by means of a network to content provider servers and is communicatively coupled by means of a network to a user device. *Id.* The content provider server serves an internet document. *See, e.g.*, *id.* at 74, 76, '060 Patent 4:4-10; 7:13-56. The highlighting server provides a highlighting service by enabling a user

to highlight the internet document on a conventional web browser application executing at the client device. *See, e.g.*, *id.* at 74-75, 78, '060 Patent 3:60-4:10; 6:27-32, 6:44-52, 11:2-13.

There is no mention of a custom user device in the disclosure of the 2007 Application. The user device is conventional, not innovative. *See, e.g.*, *id.* at 74-75, 78, '060 Patent 3:60-4:10; 6:27-32, 6:44-52, 11:2-13. It lists as exemplary user devices only conventional computing devices, such as "desktop computer, laptop computer, personal digital assistant, or mobile handset." *See id.* at 75, '060 Patent 5:26-34. It specifies that the highlighting service is enabled without downloading and permanently installing any customized client-side software. *See id.* at 57, 73, 75, 78, '060 Patent  Abstract, 2:35-44, 6:43-45, 11:4-13. In some embodiments, a *server* accessed through a conventional web browser hosts the highlighting service—either a separate server (a "highlighting service server") or the content provider server. *See id.* at 75, '060 Patent 5:35-40, 6:43-63. In the other embodiments taught by the 2007 Application, a user downloads software to enable the highlighting service: either a browser plug-in that works in conjunction with a web browser or a standalone software application. *Id.*

The 2007 Application likewise does not mention an eBook; indeed, the 2007 Application discloses no characteristic that is descriptive of an eBook. Rather, the 2007 Application teaches that the highlighting service enables a user to highlight an internet document or web page. *Id.* at 57, 73, '060 Patent  Abstract; 2:35-44. The terms "internet document" and "web page" are used interchangeably and refer to an internet document with the following characteristics: it is (i) accessed by a user and displayed using a web browser application; (ii) dynamic and changing, such as news websites and blogs; and (iii) associated with an address or uniform resource locator (URL). *Id.* at 75-77, '060 Patent 5:40-48, 8:5-10, 9:11-14. The drawings illustrates web pages in a browser environment. *Id.* at 64-72, '060 Patent Fig. 6-14. In its only independent claim, the 2007

21

Application recites that the internet document is hosted at a content server, requested from a client web browser, and relayed to a client web browser. *Id.* at 81, '060 Patent cl. 1.

The '713 Patent's device-based highlighting service—which depends on the device's in-built software and memory, with no need to download additional software—is thus entirely absent from the disclosure of the 2007 Application. The 2007 Application does not disclose, describe, or enable any innovation in which a device supports highlighting alone, without accessing a server or downloading additional software. [5] *See generally* ECF No. 41-1 at 57-81. In no embodiment does software in-built to a custom user device provide the highlighting service. Rather, in each drawing, description, and claim, the 2007 Application describes the highlighting service as being hosted and provided by a highlighting server separate and distinct from a user device. *Cf. Lockwood*, 107 F.3d at 1572 ("all limitations" must be in specification and invention must be "fully set forth" through "such descriptive means as words, structures, figures, diagrams, formulas, etc.").

The existence of a server is critical to the invention the 2007 Application describes. Its purported advantage over "conventional text editing applications" is that employing a web-based service allows users to establish a highlighting session on any generic device using a "conventional web browser," without any special software. ECF No. 41-1 at 74, 78, '060 Patent 3:60-4:10; 11:3-13. Yet Pop Top's motion requires the impossible conclusion that the 2007 Application somehow disclosed a custom device with in-built software configured to display a document and provide a highlighting service. The 2007 Application cannot be stretched that far. *See Tronzo v. Biomet*, 156

---

[5] Pop Top has not attempted to rely upon and cannot invoke dependent clams 7, 9, and 14 of the '713 Patent, which contradictorily claim both downloading no additional software and downloading additional software. This impossibility renders dependent claims 7 and 9, 14 indefinite and not enabled under section 112, ¶ 1. In any event, these claims expressly require downloading additional software and do not disclose or describe, and certainly do not enable, purely device-based highlighting.

F.3d 1154, 1158-59 (Fed. Cir. 1998) (claims to generic cup shape were not entitled to filing date of parent application which disclosed "conical cup" in view of the disclosure of the parent application stating the advantages and importance of the conical shape); *ULF Bamberg v. Dalvey*, 815 F.3d 793, 798 (Fed. Cir. 2016) (finding lack of written description where a parent application specifically distinguished the later claimed invention).

The only arguable reference in the 2007 Application to a user device having any custom function is the following boilerplate language:

> Furthermore, although many functions described herein are attributed to either a client or a server, those skilled in the art will appreciate that in alternative embodiments of the invention, a function attributed herein to a server, may in fact be implemented on, or provided by a client device. Similarly, a function described herein as being provided by a client, may be provided by a server in an alternative embodiment of the invention.

ECF No. 41-1 at 74, '060 Patent, 4:37-45. The Federal Circuit has held, however, that boilerplate language of this kind is insufficient to satisfy the written description requirement. *D Three Enterprises, LLC v. SunModo Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018) (finding boilerplate language concerning modifications a person of ordinary skill in the art may recognize insufficient to show adequate disclosure of the actual claimed combinations). In assessing priority, Pop Top is entitled only to what the earlier filed applications disclose, not what would have been obvious from the disclosure. *See PowerOasis*, 522 F.3d at 1310 ("Obviousness simply is not enough; the subject matter must be disclosed to establish possession."); *Lockwood*, 107 F.3d at 1572 ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.").

The 2007 Patent does not describe or enable a custom user device with in-built software configured to display documents and provide a highlighting service. Pop Top cannot claim the benefit of its requested alternative June 21, 2007 filing date.

In sum, Pop Top has not come forward with evidence or argument to establish an earlier priority date for the '713 Patent. Pop Top relies solely on the 2006 Provisional and the 2007 Application and has thus waived any priority claim based on any other application. And Pop Top has not shown, and cannot show, that the 2006 Provisional or 2007 Application discloses the '713 Patent's device-based claims in accordance with the requirements of  35 U.S.C. § 112. Accordingly, the priority date of the '713 Patent is its application filing date, March 14, 2019.

### C.    Pop Top has not established an unbroken priority chain.

For Pop Top to establish its priority date, it must also show, as § 120 requires, that the '713 Patent application was "filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application." The 2007 Application was granted in 2014, and the 2013 Application was granted in 2016—both before the application for the '713 Patent was filed in March 2019. ECF No. 41-1 at 83. In 2019, the only pending application in Pop Top's asserted priority chain was the 2016 Application. Pop Top must thus show that the 2016 Application was "similarly entitled to the benefit of the filing date" of the earlier applications. To establish that unbroken priority chain, Pop Top must show that the 2013 Application was entitled to claim priority to 2007 Application and the 2016 Application was entitled to claim priority to 2013 and 2007. *E.g., In re NTP, Inc.,* 654 F.3d at 1277 (where "the later filed application claims priority through the heredity of a chain of applications, each application in the chain must satisfy § 112"); *Zenon Env't, Inc. v. U.S. Filter Corp.*, 506 F.3d 1370, 1378 (Fed. Cir. 2007) (to gain benefit of earlier filing date, "each application

in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112") (cleaned up). Pop Top's motion does not even mention the specific requirements of § 120, much less make the necessary showing.

The statutory requirements are not technicalities or minor issues. *See Droplets,* 887 F.3d at 1316-17 (rejecting "hypertechnicality" argument and explaining that courts have "long-recognized" that § 120 "embodies an important public policy" and "required strict adherence to its requirements"). Pop Top is putting Nook Digital to the substantial expense and burden of a lawsuit claiming NOOK devices that have been sold for over a decade infringe a patent applied for in 2019. Pop Top cannot just waive its hand and claim that the Court should ignore any prior art after 2006. It has to establish that all requirements for its priority claim are met. And it has not done so.

## CONCLUSION

For the foregoing reasons, Nook Digital respectfully asks the Court to deny Pop Top's motion and hold that the priority date of the claims of the '713 Patent is March 14, 2019.

Date: April 15, 2022

Respectfully submitted,

/s/  *Elizabeth Brannen*
Elizabeth Brannen
Dana Berkowitz
STRIS & MAHER LLP
777 South Figueroa St., Ste. 3850
Los Angeles, CA 90017
213.995.6809
213.995.6803
ebrannen@stris.com
dberkowitz@stris.com

Jhaniel James
STRIS & MAHER LLP
111 N. Calhoun St., Ste. 10
Tallahassee, FL 32301
202.800.5750
813.330.3176
jjames@stris.com

*Counsel for Defendant*